NELLIE GALLOP *v.* COMMERCIAL PAINTING COMPANY, INC.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 99291
WATERBURY

---

[1] Remaining specific orders have been omitted for purposes of publication.

Memorandum filed February 5, 1992

*Carmody & Torrance* and *Pomeranz, Drayton & Stabnick,* for the plaintiff.

*Mulvey, Oliver, Gould & Riccio,* for the defendant.

BLUE, J. This is a negligence action brought by the plaintiff, Nellie Gallop, against the defendant, Commercial Painting Company, Inc., (Commercial), a Connecticut corporation. The defendant has filed a motion for summary judgment, asserting that the action is barred by the statute of limitations. The decisive issue involves the service of process. Both parties have filed affidavits pertaining to this issue, and, after reviewing them, the court is satisfied that there is no genuine issue as to any material fact in the sense that, even if the plaintiff's version of the facts is taken as true, the defendant must nevertheless prevail as a matter of law. The defendant is thus entitled to judgment as a matter of law. Practice Book § 384.

The plaintiff's injury was allegedly sustained on October 21, 1988. No delay in the discovery of the injury is alleged. Consequently, General Statutes § 52-584 required the action to have been brought within two years. "In Connecticut, an action is commenced on the date of service of the writ upon the defendant." *Valley Cable Vision, Inc.* v. *Public Utilities Commission,* 175 Conn. 30, 33, 392 A.2d 485 (1978). The writ, summons and complaint are dated October 26, 1990. The return of Sheriff Roland E. Mailloux in the file states that they were served by him on October 29, 1990, on

Amy Johnson, the secretary and person in charge of the defendant's principal place of business at 1210 Meriden-Waterbury Road in Southington. With this fact viewed in isolation, the action is obviously barred by the statute of limitations.

The plaintiff has countered with an affidavit of another sheriff, Frank Bochicchio. Bochicchio states that he was asked by the plaintiff's attorney to serve a writ, summons and complaint on October 3, 1990. The secretary of the state's corporate information department informed him that "the agent for service of process for Commercial . . . was Ruth V. Kane, c/o Griffin & Grayton, 48 Leavenworth Street in Waterbury." Bochicchio attempted to make service on this agent and discovered that no such business exists at that address. He returned the writ to the plaintiff's attorney "sometime shortly before October 26, 1990." At oral argument, the plaintiff conceded what these other facts plainly imply: that the complaint was redated on October 26, 1990. Obviously, the writ and summons were redated on that date as well. By this time, of course, the statute of limitations had already expired.

The plaintiff has two arguments. First, she asserts, because the original summons and complaint were sent to Bochicchio prior to the expiration of the statute of limitations and because Bochicchio attempted to serve them by going to the address given by the secretary of the state, "that sequence of events is sufficient to constitute service of process." This initial argument has no foundation in either case law or statutory text. It is not attempted service but actual service that commences an action in Connecticut. The process actually served in the present case was the redated process delivered to Mailloux on or after October 26. *Denison v. Crafts*, 74 Conn. 38, 49 A. 851 (1901). By the time of that delivery, the statute of limitations had already expired.

Connecticut does have a statute permitting process to be served after the expiration of the statutory period in certain limited circumstances, but that statute is of no help to the plaintiff in the present case. General Statutes § 52-593a (a) provides: "[A] cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to an officer authorized to serve the process or is personally delivered to the office of any sheriff within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery." Here, as mentioned, "the process to be served" was that delivered to Mailloux on or after October 26. Consequently, it was not delivered "within the time limited by law" as the statute requires. Even if the process delivered to Bochicchio on October 3, were, in spite of *Denison* v. *Crafts,* supra, considered to be the "process" served by Mailloux on October 29, it was not served "within fifteen days of the delivery" as the statute also requires. In either event, the statute, like the case law, makes no provision for attempted service. Thus, under any conceivable interpretation of the statute, the plaintiff's first argument is foreclosed.

The plaintiff's second argument is more compelling. She asserts that, regardless of statutory commands, the defendant should be estopped from claiming the protection of the statute of limitations because it had given the secretary of the state misleading information concerning its agent for service of process. This is an attractive argument, for the erroneous designation of an agent for service of process ought not to be encouraged, and it is an ancient maxim that no one may take advantage of his own wrong. Under the facts of the present case, however, this argument must fail as well. The reason that it must fail is that the plaintiff had alternative means of service readily available.

General Statutes § 33-296 (a) requires Connecticut corporations (with certain exceptions not relevant here) to "have and maintain a statutory agent for service in this state. . . ." General Statutes § 33-297 (a) provides that any process "may be served upon the corporation's statutory agent for service . . . ." This latter provision is, however, permissive rather than mandatory. General Statutes § 52-57 (c) provides a host of alternative methods by which a corporation may be served: "In actions against a private corporation, service of process shall be made either upon the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located. . . ." In fact, as the return indicates, the defendant was ultimately served by one of the methods set forth in General Statutes § 52-57 (c): Mailloux served the secretary and person in charge of the corporation at its principal place of business in Southington. It is thus evident that the defendant had a principal place of business within the state and that service could have been made within three days of the redated writ. Under these circumstances, estoppel is not appropriate.

There is ample authority that statutes of limitation are subject to equitable modification; see *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson,* 501 U.S. 350, 363, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991); *Morris* v. *Costa,* 174 Conn. 592, 599, 392 A.2d 468 (1978); but it is also "manifest that the courts cannot nullify the statute in every case in which they think it is inequitable to apply it . . . ." *Lippitt* v. *Ashley,* 89

Conn. 451, 480, 94 A. 995 (1915). Because this area involves a clash of legal cultures—equity aims at fairness, and statutes of limitations are by definition arbitrary—the case law is confusing and contradictory. See, e.g., *Stitt* v. *Williams,* 919 F.2d 516, 522 (9th Cir. 1990); *Department of Economic Development* v. *Arthur Andersen & Co.,* 747 F. Sup. 922, 943 (S.D. N.Y. 1990). Generally speaking, however, there are two types of equitable modification: equitable tolling and equitable estoppel. *Naton* v. *Bank of California,* 649 F.2d 691, 696 (9th Cir. 1981). Neither is applicable in the context of the present case.

Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada* v. *Baxter Healthcare Corporation,* 920 F.2d 446, 451 (7th Cir. 1990), cert. denied, 501 U.S. 1261, 111 S. Ct. 2916, 115 L. Ed. 2d 1074 (1991). This doctrine embraces both what is sometimes called the "discovery rule," which holds that the statute begins to run only "after discovery of the facts constituting the violation"; *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson,* supra, 364; and the related rule that the statute does not begin to run when a plaintiff knows that he has been injured "but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Cada* v. *Baxter Healthcare Corporation,* supra. (As an illustration of the confusion that reigns in this area, the Seventh Circuit held in *Cada* that the doctrine of equitable tolling does not include the discovery rule, but the Supreme Court held six months later in *Gilbertson* that it does.) A result similar to equitable tolling (mandated by statute in Connecticut) will occur where the defendant has fraudulently concealed the existence of the cause of action from the plaintiff. General Statutes § 52-595.

Other examples are where a plaintiff's disability, such as imprisonment or infancy, prevents him from acting within the time limitation or where some external event, such as war, has closed the court. Comment, "Equitable Tolling of Statutory Benefit Time Limitations: A Congressional Intent Analysis," 64 Wash. L. Rev. 681, 683 (1989).

There is a substantial question after *Gilbertson* whether the doctrine of equitable tolling applies at all to a statute like § 52-584, which provides that: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

In § 52-584, as in the similarly constructed Securities Exchange Act of 1934 construed by *Gilbertson,* the two year period, "by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling." *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson,* supra, 363. In any event, the plaintiff in the present case does not allege any delay in either the discovery of her injury or the defendant's responsibility for causing it, so the doctrine of equitable tolling has no place in the present case.

While equitable tolling focuses on the plaintiff and her knowledge, equitable estoppel focuses on the defendant and its actions. Although the Connecticut Supreme Court once questioned whether this doctrine has any place "under a public statute, designed to be of universal operation in the matter of legal remedies"; *Bank of Hartford County* v. *Waterman,* 26 Conn. 324,

331 (1857); it is now clear that the doctrine may be applied in this context. *Morris* v. *Costa,* supra, 599.

Estoppel, of course, is a general equity principle, which unlike tolling, is not limited to the statute of limitations context. The general principle is clear enough: "[T]here are two elements which must be established in order to find an estoppel: one party must do or say something that is intended or calculated to induce another into believing in the existence of certain facts and to act upon that belief, and the other party must thereby actually change his position or do some act to his injury which he would otherwise not have done." *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 85, 480 A.2d 499 (1984).

It must be admitted at the outset that these words, at one level of generality, do apply to the facts at hand. The defendant did something calculated to induce another into believing in the existence of certain facts and to act on that belief by naming a statutory agent for service. The plaintiff also did an act to her injury that she would not otherwise have done by attempting to serve the statutory agent at an apparently nonexistent address. To state the case at this level of generality, however, ignores two important details. First, as previously explained, there were alternative methods of service readily available. The defendant maintained a place of business in Southington and was not exactly hiding out. Second, the injury to the plaintiff incurred by her unsuccessful attempt to serve the agent and the subsequent passing of the statute of limitations deadline was a result of a late start. If she had given herself a few more days, she would have had plenty of time to discover that the agent could not be located and to serve the defendant at its office building. Should the defendant be estopped under these circumstances from asserting the statute of limitations? Although the question is a close one, the court concludes that the answer is no.

It is significant in the first place that the principle of equitable estoppel is ordinarily "invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Cerbone* v. *International Ladies' Garment Workers' Union,* 768 F.2d 45, 50 (2d Cir. 1985); see *Baldwin County Welcome Center* v. *Brown,* 466 U.S. 147, 151, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984). The cases in which the Connecticut Supreme Court has affirmatively applied this principle have involved precisely this situation. *Morris* v. *Costa,* supra; *International Brotherhood of Electrical Workers Local 35* v. *Commission on Civil Rights,* 140 Conn. 537, 545, 102 A.2d 366 (1953). No such situation is involved here. This does not, of course, mean that the principle of estoppel, renowned for its flexibility, is inapplicable outside this context. The court must, however, be aware that in moving away from this traditional context it is moving from the mainstream of accepted jurisprudence to its outer banks. While it may be appropriate to do so in a compelling case, the equities in the present case are not all on one side. The defendant, while no model of purity, is claiming the benefit of a statute passed by the legislature, and the plaintiff has only herself to blame for her late start and her failure to use alternative methods of service.

Moreover, an independent body of law has long existed concerning the specific problem of defendants who in one way or another evade service until the statute of limitations has run. Because " '[l]imitations are creatures of statute and derive their authority from statutes.' *Uscienski* v. *National Sugar Refining Co.,* 19 N.J. Misc. 240, 242, 18 A.2d 611 [1941]"; *Lametta* v. *Connecticut Light & Power Co.,* 139 Conn. 218, 222, 92 A.2d 731 (1952); it is primarily a legislative rather than a judicial task to define the circumstances under

which they are to be tolled. Section 52-584 designates a limited set of events (delayed actual or reasonable discovery of the injury) that delay the commencement of the two year period of limitation. In addition, the legislature has provided in related statutes that the statute of limitations is to be tolled when a defendant is absent from the state; General Statutes § 52-590; and when a defendant has fraudulently concealed the existence of a cause of action. General Statutes § 52-595. It has made no provision for tolling when a defendant conceals his whereabouts within the state. While it may nevertheless be that, under some circumstances, the running of a statute of limitations may be suspended by causes not mentioned in the statute itself or any related statute, those circumstances "are very limited in character, and are to be admitted with great caution." *Amy* v. *Watertown,* 130 U.S. 320, 324, 9 S. Ct. 537, 32 L. Ed. 953 (1889). Concealment of fraud, even without a statute such as § 52-595, has by many courts been considered good cause for tolling the statute of limitations. As the United States Supreme Court explained, however, "this is a very different thing from attempting to avoid service of process, and cannot be cited as aiding in any way the adoption of such a rule in the latter case. Concealment of fraud prevents a party from knowing that he has been injured and has a cause of action. He cannot take any steps to avoid redress. But when a party knows that he has a cause of action, it is his own fault if he does not avail himself of those means which the law provides for prosecuting his claim, or instituting such proceedings as the law regards sufficient to preserve it." Id., 325. Thus, living in the state under an assumed name will not ordinarily toll the statute. *St. Paul Title & Trust Co.* v. *Stensgaard,* 162 Cal. 178, 181, 121 P. 731 (1912). Nor will living in the state in a concealed abode. *Engel* v. *Fischer,* 102 N.Y. 400, 404, 7 N.E. 300 (1886). It may

be appropriate to relax the rigor of this admittedly dated doctrine in clear cases of fraud; see *St. Paul Title & Trust Co.* v. *Stensgaard,* supra; or criminality; see *In re Nationwide Mutual Ins. Co.,* 39 Misc. 2d 782, 785, 241 N.Y.S.2d 589 (1962), aff'd, 19 App. Div. 2d 683, 241 N.Y.S.2d 1021 (1963) (involving hit-and-run driver). There is, moreover, some authority that estoppel may be invoked where a defendant has suggested service of process at a place where he could not be found and where no other means of service of process existed. *J. Cushing Co.* v. *Brooklyn Trust Co.,* 235 Mass. 171, 126 N.E. 429 (1920); *Clark* v. *Augustine,* 62 N.J. Eq. 689, 51 A. 68 (1902). Those cases are, however, a far cry from the present case. The defendant, to repeat, was not hiding out, and alternative means of service were available to the plaintiff.

The court does not mean to imply that the defendant's behavior has been exemplary. State statutes, however, make no provision for the peculiar inability to make service that the plaintiff experienced here, and the law of equity will grant no indulgence in these circumstances. "If this is an omission, the courts cannot supply it. That is for the legislature to do." *Amy* v. *Watertown,* supra, 327. "Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." *Wood* v. *Carpenter,* 101 U.S. 135, 139, 25 L. Ed. 807 (1879).

The defendant's motion for summary judgment is granted.